34. Upon information and belief, Defendant, The Port Authority of New York and New Jersey ("PANYNJ") is a bi-state port district, established in 1921 through an interstate compact, and headquartered at 225 Park Avenue South, New York, New York.

35. Upon information and belief, Defendant Anthony R. Coscia, Chairman, Board of Commissioners, of the PANYNJ, is a natural person engaged in business in the City and County of New York, who is sued individually in his capacity as an officer, agent, and/or employee of Defendant PANYNJ.

36. The Members of the Board of Commissioners are natural persons and the Board of Commissioners was created under the compact between the States of New York and New Jersey.

37. Upon information and belief, PANYNJ Police Department, or Port Authority Police Department ("PAPD"), is a law enforcement agency in New York and New Jersey, the duties of which are to protect all facilities owned by the PANYNJ, and to enforce state and city laws at all the facilities, employing approximately 1,660 law enforcement officers. Defendant PAPD is controlled, owned, and operated by Defendant PANYNJ.

38. Upon information and belief, Defendant Michael A. Fedorko, Director of Public Safety Department/Superintendent of Police of the Port Authority Police Department, is a natural person engaged in business in the States of New York and New Jersey. He is sued individually and in his capacity as an officer, agent, and/or employee of Defendant PANYNJ and/or Defendant PAPD.

39. Upon information and belief, Defendant Mary Lee Hannell, Director, Human Resources Department, PANYNJ, is a natural person engaged in business in the states of New York

and New Jersey. She is sued individually and in her capacity as an officer, agent and/or employee of Defendant PANYNJ and/or Defendant PAPD.

## FACTUAL ALLEGATIONS

### *Historical Background*

40. In 1921, New York and New Jersey signed a compact establishing the Port Authority as a joint and common agency of the two states. The legislatures of the two states maintain control of the Port Authority, and according to the Compact "the Port Authority shall be regarded as performing an essential governmental function in undertaking the construction, maintenance and operation thereof and in carrying out the provisions of law relating thereto."

41. In or around 1969, The Port Authority adopted a Compensation Resolution which provides for salary (and compensation) ranges to be set by the Committee on Operations of the Board of Commissioners, and for salary and benefit administration to be delegated to the Executive Director (under the supervision of the Chairman of the Committee).

42. Upon information and belief, under Port Authority policies and procedures, Commissioners' Resolutions have superior authority over any other memoranda or other instruction. Pursuant to Port Authority policy and practice, only a change in law or amendment or a superseding resolution by the Commissioners can modify, change, alter, or amend the resolutions that have been passed by the Commissioners.

43. Nonetheless, it has been the position of the Port Authority that "compensation actions" may be approved by the full Board, by its Committee on Operations as a singular item or as part of the Authority's annual budget approval process or, on a temporary basis pending ratifications with the approval of the Chairman of the Committee on Operations.

44. On or about July 10, 1970, the Office of the Executive Director of the Port Authority issued a memorandum designating "Categories of Port Authority Employees," in which Supervising or Command Staff Police Officers were designated a subdivision of the "Plan B" employees, specifically providing the "FP" category for "supervisory employees responsible for supervising police."

45. On or about October 30, 1974, pursuant to Article XI, Section D-7 of their By-laws, the Board of Commissioners approved an Operations Committee agenda item to address "Changes in Compensation and Benefits for Police Personnel Not Covered by Memoranda of Agreement." (Hereinafter referred to as the "1974 Commissioners' Resolution"). In the 1974 Commissioners' Resolution, the Board of Commissioners set "permanent salary ranges for Police Superior" and provided the same longevity, vacation, holiday, and uniform allowances to Police Supervisors as those negotiated by the Police Benevolent Association (hereinafter "PBA") and Sergeants Benevolent Association (hereinafter "SBA") for their members. In addition, the Resolution provided for a pay scale for each rank within the department, calculated based on a percentage increase over the ranks below it (hereinafter referred to as a "pay differential").

46. The 1974 Commissioners Resolution outlined the pay differential from prior rank as follows:

   a) Police Officer to Sergeant – 25%
   b) Sergeant to Lieutenant – 15%
   c) Lieutenant to Captain – 20%
   d) Captain to Deputy Inspector – 5%
   e) Deputy Inspector to Inspector – 5%

    f) Inspector to Deputy Chief – 5%

    g) Deputy Chief to Chief – 5%

47. Moreover in noting the following: "[I]t was reported to the Committee that on October 19, 1974 formal Memorandum of Agreement between the Port Authority and the Police Benevolent Association and the Sergeants Benevolent Association were executed providing for a salary and benefits increase for Police Officers and Sergeants which had been approved by the Board …. These increases <u>require</u> that <u>permanent adjustments</u> be made in salary and benefit programs for other police personnel in order that appropriate relationship between ranks be maintained... Additionally it is recommended that the longevity, pay, vacation, holiday, and uniform allowances for Police Officers and Sergeants provided for in the memoranda of Agreement be made applicable to Police Supervisors…" The 1974 Commissioners Resolution formalized the longstanding tradition of "flow-through" i.e. the policy and practice of linking the salary and benefits of Police Supervisors to the union agreements negotiated by the subordinate police unions. [Emphasis added.]

48. Similarly, in November, 1976, the Commissioners again, based on the concept of "flow-through", in response to the execution of the PBA and the SBA Memoranda of Agreement, again approved salary and benefit increases for Police Supervisors "consistent with those afforded Police Officers and Police Sergeants" which "maintain[ed] the existing 15% pay differential between the maximum salaries of Sergeants and Lieutenants, 20% differential between the maximum salaries of Lieutenants and Captains', 5% differential between the maximum salaries of Captains

and Deputy Inspectors, and 5% differential between the maximum salaries of Deputy Inspectors and Inspectors."

49. Upon information and belief, from, in, or around November, 1978 – July, 1980, the Port Authority held meetings with the representatives of the Police Supervisors to negotiate future salary and benefits for Superior Officers.

50. In 1980, during these negotiations, the Police Supervisors in the rank of Captain or higher were given the option to either remain part of the police compensation plan or join the management plan. The Officers opted for the police compensation plan, and were advised that in order to continue "flow-through" of many of the benefits obtained by the represented ranks, the supervisors would be expected to give up their management retirement life insurance plan and replace it with the plan of the represented ranks. The Police Supervisors acquiesced and an agreement was reached on July 21, 1981.

51. In 1984, following the ratification of the July 1983-1985 Memorandum of Agreement, the Police Supervisors received their appropriate flow-through adjustment.

52. As a result of delays during the 1985-1987 contract negotiations with the represented members of the Port Authority Police Department, Police Supervisor wage increases were delayed. In the meantime, all Port Authority Management staff other than Police Supervisors received wage increases of 6.2% in 1985; 5.5% in 1986 and 4.9% in 1987. Due to their agreement to flow-through, Police Supervisors were not considered for these management increases. In the fall of 1987, given the delay in the union contract negotiations, the Public Safety Director offered to seek interim raises for the Police Supervisors. Nonetheless, the Superior Officers unanimously expressed their desire to wait until the contract was settled and collect their flow-through retroactively.

53. In 1993, the Human Resources Department established a new salary schedule for all "FP" pay plan employees, i.e. Police Supervisors, creating salary progression steps for the ranks of Captain and above, permitting individuals to progress through steps based upon job performance. Although the policy adjusted the pay scale of the "FP" pay plan employees, it did not alter the issue of flow-through of benefits from the unionized contracts to Police Supervisors.

54. In or around 1996, the Superior Officers learned that the Port Authority was planning to eliminate the pay differential established by the 1974 Commissioners Resolution. Upon learning of this intention the Captains petitioned the Port Authority to uphold the pay differential established by the 1974 Resolution, highlighting the longstanding policies and the impact of these changes would have on the Command Staff Ranks.

55. Despite their attempts to persuade the Port Authority that their decision to eliminate the pay differential was improper; on November 18, 1996 by way of written memorandum from A. Paul Blanco, the Port Authority eliminated the "fixed" pay differential[1] and instead established a merit based salary program[2].

56. As a direct result of this new policy, the ensuing litigation surrounding it, and the concerns of Lieutenants to give up union protection - the Port Authority experienced

---

[1] The Supervising Police Officers brought suit against the Port Authority challenging this policy. The Court found that the Officers' actions were time-barred as they failed to file suit within one year of this memorandum. Additionally, while the Court raised questions regarding whether the Port Authority followed its own procedures in implementing this policy, it does appear that its implementation attempted to be procedurally consistent with the 1969 Commissioner's Resolution i.e. was approved by the Committee on Operations.

[2] Although the memo states: "effective November 1, 1996, salary increases will be available on the same basis as increases giver to Port Authority management" – despite breaking the "fixed" pay differential - the Port Authority has continuously maintained the practice of negotiating the salary and benefits of Police Supervisors in conjunction with and reflective of the police union contracts.